**IN THE COURT OF APPEALS OF IOWA**

No. 25-0504
Filed May 21, 2025

**IN THE INTEREST OF B.H.,**
**Minor Child,**

**B.H., Father,**
    Appellant/Cross-Appellee,

**STATE OF IOWA,**
    Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, Judge.

A father appeals and the Iowa Department of Health and Human Services cross-appeals the juvenile court's dispositional review order. **AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; REVERSED ON CROSS-APPEAL.**

Danielle M. Ellingson of Noah, Smith, Sloter & Ellingson PLC, Charles City, for appellant father.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Elizabeth Wayne, Parkersburg, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

In the throes of a mental-health episode, the father reported that he sexually abused his seven-year-old daughter. After stabilizing, the father denied any abuse, and an investigation found some evidence abuse may have occurred but not a preponderance to confirm the allegation. Still, the daughter was removed and adjudicated in need of assistance given the father's ongoing mental-health struggles. And the juvenile court barred any contact between the father and daughter. In a prior appeal, we reversed that bar, finding fully supervised visitation suitable to protect the daughter while working toward reunification.

While that appeal was pending, the father obtained a troubling psychosexual evaluation, which recommended no contact between the father and daughter until the father completed inpatient sex-offender treatment. The juvenile court enforced that recommendation, but the father's ability to work toward visits ground to a halt when the Iowa Department of Health and Human Services could not find a program that would accept the father. Seven months passed without any luck. And during that time, the father was compliant with all other treatment and recommendations. So the father and Department requested that fully supervised visits in a therapeutic setting begin. The juvenile court denied any visitation, and both the father and Department appeal.

We reverse the visitation restriction. Given the father's progress over the past year, and with the safeguards of full supervision and a therapeutic setting, we believe the daughter can be adequately protected while allowing the case to proceed. As for the father's request for a new evaluation by a new provider, the court's order indeed authorized that request, so we affirm that portion of the order.

## I.    Factual Background and Proceedings

In February 2024, a seven-year-old daughter was removed from her parents' custody after the father told the mother that he sexually abused the daughter.[1]  The father is diagnosed with schizoaffective disorder, bipolar type.  Although his condition is well managed on medication, his treating physician changed his medications in February, which led to a manic episode.  And it was during this manic episode that the father told the mother that he sexually abused the daughter.  A few days later, he was admitted to the hospital for inpatient psychiatric care.  After stabilizing, the father denied ever abusing the daughter.

The Iowa Department of Health and Human Services investigated the allegation and found that it was not confirmed because the evidence that sexual abuse occurred did not "reach a preponderance of the evidence."  Some evidence appeared to corroborate abuse—around the time of the alleged abuse, the daughter had gone to the doctor for unexplained vagina bleeding and the doctor observed irritation in her vaginal area.  But the daughter was unwilling to discuss the allegations during a child protective center interview.  And given the father's mental condition at the time of his statement, the investigator concluded "[i]t cannot be proven whether this disclosure was true or the result of a delusion, but it does certainly show that [the daughter] is not currently safe in [the father's] care."

The daughter was adjudicated in need of assistance in April.  In that order, the juvenile court noted the father's condition had steadied and he was "responsive

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110.

and cooperative" during his interactions with the Department. Still, the court cautioned that although the allegation was not "confirmed," that did not "mean the abuse didn't happen." To that end, the court stressed the daughter's "physical indicators consistent with the abuse" and her "refusal to discuss contact with the Father" during her interview suggested the abuse may have occurred. So it placed the daughter in her paternal grandparents' care and denied the Department's request to start visits between the father and daughter as "premature." And it ordered the father to complete a psychosexual evaluation.

About a month later, the Department reported the father was complying with all treatment and recommendations, except he had not yet completed the psychosexual evaluation. To begin working toward reunification, the Department requested that visitation between the father and daughter begin, with "interactions start[ing] in a supervised and/or therapeutic environment after consultation with the [daughter's] therapist." The guardian ad litem disagreed. Although the daughter "voiced that she would like contact with her father," the guardian was concerned about resuming contact before the father was evaluated.

After a dispositional hearing, the juvenile court continued to bar the father from having contact with the daughter. The father appealed, challenging the daughter's continued adjudication, continued removal, and the lack of visitation. *See In re B.H.*, No. 24-0869, 2024 WL 3688596, at *1 (Iowa Ct. App. Aug. 7, 2024). We affirmed the daughter's adjudication and removal, but we reversed the visitation restriction, remanding for "supervised visitation at HHS's discretion." *Id.* at *4. In reversing, we stressed the importance of visitation when working toward reunification and that "[r]estricting the father to supervised visitation, which

eliminates the risk of adjudicatory harm to the child, maintains the parent-child bond, and serves the child's best interests." *Id.*

Shortly after our opinion was filed, the parties obtained the father's psychosexual evaluation. The evaluation was concerning, as the father was "highly defensive" during testing; "had the tendency to avoid, sometimes minimize, and contradict his responses across tests"; and exhibited some degree of attraction to juvenile females. Ultimately, the evaluator "*strongly* recommended that given the results of this evaluation [the father] continue to have a no contact order in place with his daughter as well as no unsupervised time with minors." It also "strongly recommended" the father complete inpatient sex offender treatment. After reviewing the report, the Department recommended the father "continue to have no contact with [the daughter] and follow through with the recommendations including in patient sexual offender treatment." Still, the Department urged that interactions between the father and daughter "be at the discretion" of the Department, rather than the court. The guardian ad litem disagreed with giving the Department discretion, pointing to the evaluator's no-contact recommendation.

The case proceeded to an August dispositional hearing, where the juvenile court noted that although our opinion ordered visitation to resume, circumstances had changed. The court relied on the evaluation's findings, including a diagnosis of "frotteuristic disorder," which "includes sexual gratification with a non-consenting person." So the court continued to prevent any visits or contact between the father and daughter. It found sex offender treatment was "essential" for the father, and planned to revisit the possibility of resuming contact "at every hearing to determine if [the father] has made sufficient progress in his treatment program."

But the father's ability to progress toward visitation ground to a halt when the Department could not find an inpatient sexual offender treatment program for the father. Despite extensive efforts—including contacting programs in many other states—the Department could not locate a program that would accept the father's insurance, comply with the evaluator's recommendations, and had availability.

By November, the Department still had not found a provider, due in part to its inability to provide "funding for ongoing treatment and services," which meant a program needed to accept the father's insurance or be affordable out of pocket. As for visits, the Department took no position on resuming contact. Instead, the Department reported that "[s]hould the court allow visitation to begin," it recommended the visits "be fully supervised in a therapeutic setting." And the father requested that visits resume.

The court again denied any contact until he completed sex offender treatment, citing the evaluation's recommendation. But to move the case along, it ordered the Department to pay for the treatment program, which it found directly related to the Department's reunification obligations. The Department petitioned for certiorari review of the court's order, which our supreme court granted. The supreme court also stayed the portion of the juvenile court's order directing the Department to "find a funding source to pay" for the father's sex offender treatment. That certiorari proceeding remains pending.

Another four months passed without finding a treatment program. By a March dispositional review hearing, the father had not had any contact with the daughter in over a year. So the Department recommended that interactions resume at its discretion and "in consultation with" the guardian ad litem. The

guardian ad litem agreed. And the father likewise requested visitation. He also asked for a second psychosexual evaluation conducted by a different evaluator than the first.

In its written order, the juvenile court authorized a new evaluation for the father to obtain updated recommendations in light of his progress over the last year. The court noted the evaluation would "ideally" be completed by the same evaluator, but did not require it. And because the father still had not begun the recommended sex offender treatment, the court found "the current recommendation for no contact with [the daughter] needs to stay in effect." So it ordered that "[i]nteractions between the child and [the father] shall be suspended at this time."

The father now appeals, and the Department cross-appeals.

## II.     Visitation

Both the father and the Department challenge the juvenile court's continued bar on any contact between the father and daughter. We review child-in-need-of-assistance proceedings de novo. *In re M.B.*, 553 N.W.2d 343, 344 (Iowa Ct. App. 1996).

As we stressed in the prior appeal, "[v]isitation between a parent and child is an important ingredient to the goal of reunification." *Id.* at 345. Even when a parent fails "to comply with the requirements of a court order or the department," family interaction must continue in child-in-need-of-assistance proceedings unless the court or the department finds "that such interaction would be detrimental to the child." Iowa Code § 232.102A(2) (2025); *accord M.B.*, 533 N.W.2d at 345 ("[T]he

nature and extent of visitation is always controlled by the best interests of the child.").

To begin, the Department insists that the juvenile court's orders prohibiting visitation lacked the necessary finding that visits would be "detrimental to the child," rendering them invalid. Iowa Code § 232.102A(2). We disagree. After reviewing the evaluation, the juvenile court found the daughter could not safely interact with the father until he engaged with sex offender treatment. The court consistently enforced that finding across its orders over the following months. True, its orders do not contain the word "detrimental." But finding that a visit would be unsafe is in essence the same. And we do not read section 232.102A(2) so rigidly as to invalidate any visitation order that lacks the specific word "detrimental." So we do not reverse the visitation restriction on this basis.

Still, we disagree with the juvenile court's finding that the daughter cannot safely interact with her father during fully supervised visits in therapeutic settings. To be sure, visitation "is only one element in what is often a comprehensive, interdependent approach to reunification." *M.B.*, 553 N.W.2d at 345. Should services "directed at removing the risk or danger responsible for a limited visitation scheme" fail their "objective, increased visitation would most likely not be in the child's best interests." *Id.* And we share the juvenile court's goal of protecting the daughter from any unsafe or damaging interactions with the father, as well as its concern over the father's statements during the evaluation and its resulting findings. But nearly a year has passed since that evaluation. In this time, the father began participating in, and regularly attends, couples therapy and a sexual-addiction support group as recommended by the evaluator. He also consistently

attends mental-health therapy. He has not had another episode. Other than participating in inpatient sex offender treatment, he has complied with every other recommendation provided by the evaluator and the Department. So none of the services directed at resuming contact have thus far failed their objective, and all agree the father is blameless for his inability to complete inpatient treatment.

The daughter has also been participating in therapy. Her therapist reported that "she is doing very well," but that she "miss[es] her dad and hopes that they get to have visitation soon," and expressed the opinion that visitation in a therapy setting would be "fine" for the daughter. The guardian ad litem also supported resuming visitation in a therapeutic setting at the Department's discretion.

Visitation arrangements should be "designed to facilitate reunification while protecting the child from the harm responsible for the removal." *Id.* With the important controls of full supervision and a therapeutic setting, we believe the daughter would be protected from the harm leading to her removal. So we reverse the juvenile court's visitation restriction to allow for fully supervised visitation in a therapeutic setting to begin. The Department and juvenile court retain discretion to terminate visits if they become detrimental to the daughter. *See* Iowa Code § 232.102A(2). And should the father or Department wish to progress to more independent visits down the road, we leave it to the juvenile court—as informed by the record and the Department's and guardian ad litem's recommendations—to assess whether removing those limits would harm the daughter. *See id.*

### III. New Psychosexual Evaluation

The father also challenges the juvenile court's order for a new psychosexual evaluation, contending that the court erroneously denied his request that it be

completed by a different evaluator than the first evaluation. The Department agrees that a new evaluator is reasonable under the circumstances and any order prohibiting that should be reversed. But the Department notes the written order did not prohibit a new evaluator and no transcript of the hearing was yet available when it filed its response to the father's petition on appeal.

The Department is correct that the written order authorizing a second evaluation does not require the same evaluator. Nor did the court make any such verbal order at the hearing. In both contexts, the juvenile court expressed its preference that the same professional evaluate the father but did not require it. Given that the Department agrees with the father that a new evaluator is appropriate here and the Department is permitted by the court order to proceed in that manner, we see no basis to reverse.

In so finding, we stress one critical point. The father argues the new evaluation should be "based on current information without any bias." To the extent that he believes he should not have to provide the new evaluator with a copy of the prior evaluation, we disagree. The new evaluator should have access to all information he or she finds necessary, including the prior evaluation. Undergoing a new evaluation given his progress over the past year is a good step toward assessing the viability of reunification—it is not an opportunity to avoid the consequences of his behavior and responses during the first evaluation. With that, we affirm the new-evaluation portion of the juvenile court's order.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; REVERSED ON CROSS-APPEAL.**